# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **ALFREDO HOLGUIN** | § | |
| **TDCJ # 1809852,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **EP-17-CV-159-KC** |
| | § | |
| **LORIE DAVIS, Director, Texas** | § | |
| **Department of Criminal Justice,** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Alfredo Holguin challenges Respondent Lorie Davis's custody over him based on his conviction and life sentence for capital murder. Holguin seeks relief through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).[1] Holguin raises claims of ineffective assistance of counsel; insufficiency of the evidence; error in the jury charge; and tainted identification evidence.[2] Davis argues the Court should deny all claims raised by Holguin on the merits.[3] After reviewing the record and for the reasons discussed below, the Court finds Holguin has not established his entitlement to federal habeas relief. The Court will accordingly deny Holguin's petition. The Court will additionally deny Holguin a certificate of appealability.[4]

## BACKGROUND AND PROCEDURAL HISTORY

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] Pet'r's Pet. at 6-7, ECF No. 1.

[3] Resp't's Resp. at 1, ECF No. 7.

[4] Also pending before the Court is Holguin's "Motion to Supplement His Writ with Evidence of Actual Innocence via DNA Report" (ECF No. 5). Attached to the motion is a Texas Department of Public Safety DNA Laboratory Report, dated March 29, 2012 (ECF No. 5-1). The lab report excludes Holguin as a primary contributor of the DNA taken from the victim's fingernail scrapings. *Id.*

Davis has custody of Holguin pursuant to a judgment and sentence imposed by the 243rd District Court of El Paso County, Texas.[5]

State court records establish that on October 6, 2002, Jesus Salcido witnessed two men force Mark Anthony Cedillo—at gunpoint—into the back seat of a brown sedan displaying Mexican license plates.[6] "A few minutes later, witnesses driving in the vicinity saw the sedan in a nearby parking lot and two Hispanic men, one larger than the other, assault Cedillo, who crumpled to the ground bleeding."[7] Cedillo died at the scene as a result of two gunshot wounds.[8] After talking to Salcido and the other witnesses, law enforcement officers identified Alfredo Holguin and his cousin, Benito Holguin, as suspects.[9]

> Three days after Cedillo's death, [Police Detective] Pantoja went to [Cedillo's] funeral and showed Salcido photo lineups containing Benito's and Appellant's photographs. . . . Salcido identified Benito and Appellant from the lineups shown to him that day. Approximately two weeks later, Salcido was shown eight photo lineups—each containing six photographs—at the police station and asked if he recognized any of the individuals in them. Two of the lineups contained Benito's and Appellant's photographs. Again, Salcido identified Benito as the kidnapper and Appellant as the driver. Although Salcido was confident in his identification of Benito, he was not as confident in his identification of Appellant.[10]

An indictment charged Holguin with Cedillo's murder by shooting him with a firearm.[11] On September 30, 2011—approximately nine years after Cedillo's murder—Mexican authorities delivered Holguin to an El Paso Police Department detective waiting for him at the Paso del Norte International

---

[5] *State v. Holguin*, Cause No. 20120D01334 (243rd Dist. Ct. El Paso Cnty., Tex. Aug. 1, 2012); No. 08-12-00253-CR, 2014 WL 4536544 (Tex. App. Sept. 12, 2014, pet. ref'd), *cert. denied*, 136 S. Ct. 543 (2015); *Ex parte Holguin*, WR-86,065-1 (Tex. Crim. App. Apr. 5, 2017).

[6] *Holguin*, 2014 WL 4536544, at *1–2.

[7] *Id.* at* 1.

[8] *Id.*

[9] *Id.* at * 1 n.1 (explaining Benito Holguin died prior to trial).

[10] *Id.* at * 1.

[11] Clerk's R. at 10 (Indictment, Sept. 20, 2005), ECF No. 8-7.

Bridge.[12]  A superseding indictment subsequently charged Holguin with causing Cedillo's death by shooting him with a firearm during the course of a kidnapping.[13]

Prior to trial, Holguin's counsel moved to suppress evidence of Salcido's identification of Holguin, arguing the photo line-up procedure was "impermissibly suggestive."[14]  Holguin's counsel asserted Detective Pantoja guided Salcido to identify Holguin and the media's publication of Holguin's photo tainted the identification.

During a hearing on the motion to suppress, Detective Pantoja testified he did not suggest to Salcido which photographs to select:

> Pantoja testified that Salcido was shown eight photo lineups, two of which contained photographs of Benito and Appellant, respectively; that the photographs in the lineups were obtained from DPS; and that each lineup depicted Hispanic males with similar characteristics, including size and build, hair color, facial hair, and clothing.  Pantoja further testified he asked Salcido to look through the lineups to see if he recognized anyone.  According to Pantoja, he did not tell Salcido which photographs to select or that the lineups contained photographs of the suspected perpetrators.  Pantoja testified Salcido selected photographs of Benito and Appellant from the lineups; identified them as the kidnapper and driver, respectively; and circled, dated, and signed the two photographs.  On cross-examination, Pantoja acknowledged that photographs of Benito and Appellant had been provided to the media sometime before Salcido identified them from the lineups; however, Pantoja maintained that he did not know if Salcido had seen the photographs distributed to the media and that he never spoke to Salcido about the matter before showing him the lineups.[15]

Holguin's counsel argued Salcido's identification of Holguin was "unreliable."[16]  The prosecutor countered the defense had not met its burden of showing the identification procedures were unduly suggestive.[17]  The trial court agreed that "there was no evidence elicited specifically regarding any

---

[12] Appellee's Br., *Holguin v. State*, No. 08-12-00253-CR, 2013 WL 6710825, at *7 (Tex. App.—El Paso).

[13] Clerk's R. at 80 (Re-indictment, Mar. 8, 2012), ECF No. 8-7.

[14] *Id.* at 105–06 (Mot. to Suppress Identification); Trial Tr., vol. 2 (Mot. Hearing, June 13, 2012, pp. 1–46), at 9–20, ECF No. 8-5.

[15] *Holguin*, 2014 WL 4536544, at *1.

[16] Resp't's Resp. at 5.

[17] *Holguin*, 2014 WL 4536544, at *2.

possible taint from media exposure" and that "mere speculation" was insufficient to sustain Holguin's burden.[18]

At trial, Salcido conceded in front of the jury that he could not positively identify Holguin as a participant in Cedillo's murder:

> Salcido testified about his out-of-court identification of Appellant and the circumstances attending it. . . . The State sought the admission of the lineups into evidence, and the trial court admitted them without objection. On cross-examination, Salcido admitted he could not positively identify Appellant as the driver. The State did not ask any of its other witnesses to identify Appellant. During closing arguments, defense counsel argued the State had failed to prove beyond a reasonable doubt that Appellant was the driver.[19]

The jury listened to the testimony of other witnesses, including a witness who explained the police traced the license plate number of the vehicle involved in the kidnapping to Holguin's father in Chihuahua, Mexico.[20] The jury also examined Department of Homeland Security records, which revealed Holguin's vehicle had crossed the border from Mexico to El Paso on the day of the murder.[21]

Holguin's counsel moved for a directed verdict at the close of the State's case and re-urged the motion at the close of evidence, arguing the State had failed to produce "even a scintilla of evidence" that Holguin was one of the two individuals who kidnapped and killed Cedillo.[22]

"The jury charge authorized the jury to convict Appellant as a principal actor or as a party to the offense under either Sections 7.02(a)(2)—aider and abettor—or 7.02(b)—coconspirator—of the Texas Penal Code."[23] Holguin's counsel objected to the inclusion of an instruction on Section 7.02(b). He argued it raised a separate theory of liability not supported by the evidence. He further argued it

---

[18] *Id.*

[19] *Id.*

[20] Appellant's Br. at 11–12, *Holguin v. State*, No. 08-12-00253-CR, ECF No. 8-3.

[21] *Id.* at 12–13, 16.

[22] *Id.* at 17.

[23] *Holguin*, 2014 WL 4536544, at *3; *see also* Clerk's R. at 172 (Charge of the Jury), ECF No. 8-7.

permitted the jury to convict Holguin of capital murder without having to find that he had "the specific intent to kill."[24]  The trial court overruled the objection.

The jury found Holguin guilty of capital murder.  The trial court imposed the automatic sentence of life imprisonment.[25]

Holguin's counsel filed a motion for a new trial.  He once again asserted the jury charge allowed for a conviction on a charge of capital murder without proof of the specific intent to kill.[26]  The motion for a new trial was denied by operation of law.[27]

Holguin timely appealed his conviction.  Holguin asserted the trial court erred in denying the motion to suppress, the identification evidence was insufficient to support his conviction, and the trial court erred in overruling his counsel's objection to the mens rea language in the jury charge.[28]

The State argued, among other things, that Holguin's counsel waived his claim regarding the identification evidence by affirmatively stating "No objection" to the introduction of this evidence at trial.[29]  The State maintained:

> As a general rule, when a pretrial motion to suppress evidence is overruled, the defendant need not subsequently object to the admission of the same evidence at trial in order to preserve error.  *See Dean v. State*, 749 S. W.2d 80, 83 (Tex. Crim. App. 1988); *Ochoa v. State*, No. 08-08-00228-CR, 2010 WL 2844906 at *2 (Tex. App.—El Paso 21 July 2010, pet. ref'd) (not designated for publication); *Kimmel v. State*, No. 08-08-00028-CR, 2009 WL 4673791 at *1 (Tex. App.—El Paso 9 December 2009, no pet.) (not designated for publication).  It is well settled, however, that when a defendant affirmatively asserts during trial that he has "no objection" to the admission of the complained-of evidence, he waives any error in admission of the evidence despite the pretrial ruling.  *See Holmes v.*

---

[24] *Holguin*, 2014 WL 4536544, at *3;

[25] Clerk's R. at 177–78 (J. of Conviction by Jury), ECF No. 8-7.

[26] *Id.* at 179–81 (Mot. for New Trial).

[27] *See Parks v. State*, 02-15-00419-CR, 2017 WL 444378, at *3 (Tex. App.—Fort Worth Feb. 2, 2017, pet. ref'd) ("Texas Rule of Appellate Procedure 21.8 'allocates seventy-five days following the imposition of the sentence in open court for the trial court to rule on the motion [for new trial]; if the motion is not timely ruled on within that period, the authority to grant the motion expires, and the motion is deemed denied by operation of law.'") (quoting *State v. Holloway*, 360 S.W.3d 480, 485 (Tex. Crim. App. 2012)).

[28] Appellant's Br. at 18, *Holguin v. State*, No. 08-12-00253-CR, ECF No. 8-3.

[29] Appellee's Br., 2013 WL 6710825, at *9, *11–*38.

*State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008) (defendant who affirmatively states, "no objection," when evidence is offered, waives his right to complain on appeal that the evidence was illegally obtained); *White v. State*, No. 08-10-00020-CR, 2011 WL 3612213 at *2 (Tex. App.—El Paso 17 August 2011, no pet.) (not designated for publication) (by stating he had "no objection" trial to admission of the photographic lineups, appellant waived any error from trial court's denial of his motion to suppress); *Ochoa*, 2010 WL 2844906 at *2 (any alleged error from trial court's denial of motion to suppress photo-lineup identification was waived when appellant stated he had "no objection" to admission of the photo lineups). As Holguin affirmatively stated "no objection" to admission of the photo lineups during trial, this part of his first issue for review should be overruled.[30]

The Eighth Court of Appeals affirmed Holguin's conviction, and the Court of Criminal Appeals refused Holguin's *pro se* petition for discretionary review.[31] The United States Supreme Court denied Holguin's petition for a writ of certiorari.[32]

Holguin sought a state writ of habeas corpus, arguing the photo line-up was unduly suggestive, his trial counsel failed to present adequate evidence in support of the motion to suppress the photo line-up identification, and trial counsel failed to preserve the issue of the impermissibly suggestive photo line-up for appeal.[33] The Court of Criminal Appeals denied the application without written order.[34]

In his federal habeas petition, Holguin alleges the State obtained his conviction through unduly suggestive identification procedures; the State presented insufficient evidence to support his conviction; an improper jury charge deprived him of due process; and he received ineffective assistance because his trial counsel failed to call witnesses at the hearing on his motion to suppress the identification evidence.

## APPLICABLE LAW

---

[30] *Id*. at *21–*22.

[31] *Holguin*, 2014 WL 4536544.

[32] *Holguin v. Texas*, 136 S. Ct. 543 (2015).

[33] Appl. for a Writ of Habeas Corpus under Code of Criminal Procedure Article 11.07 at 34–101, ECF No. 8-10.

[34] Action Taken, April 5, 2017, ECF No. 8-8 (*Ex parte Holguin*, WR-86,065-1 (Tex. Crim. App.)).

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged."[35] It "is designed to guard against extreme malfunctions in the state criminal justice system."[36] It provides an important, but limited, examination of an inmate's conviction and sentence.[37]

Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[38] They must generally defer to state court decisions on the merits,[39] and on procedural grounds.[40] They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[41]

The Supreme Court summarized the basic principles in *Harrington v. Richter*, 562 U.S. 86 (2011). It explained § 2254(d) permits a federal habeas court to grant relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court.[42]

---

[35] *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993).

[36] *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)).

[37] *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

[38] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[39] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[40] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[41] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[42] *Harrington*, 562 U.S. at 100 (*citing Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.[43]

Under the "unreasonable application" clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case."[44] The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[45] Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not on whether the state court considered and discussed every angle of the evidence.[46] Indeed, state courts are presumed to "know and follow the law."[47]

A reviewing federal habeas court presumes the state court's factual findings are sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence."[48] This presumption extends not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."[49]

---

[43] *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

[44] *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted).

[45] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[46] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").

[47] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[48] 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010).

[49] *Register v. Thaler*, 681 F.3d 623, 629 (5th Cir. 2012); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."[50] "If this standard is difficult to meet, that is because it was meant to be."[51]

## ANALYSIS

### A.      Identification procedure

Holguin maintains the photo lineup was impermissibly suggestive because Detective Pantojato showed Holguin's photograph to Salcido on two separate occasions: first at Cedillo's funeral on October 9, 2002, and then again during a photo lineup at the police station on October 24, 2002.[52]  He claims Detective Pantojato then gave "false statements" during the suppression hearing that he did not show Salcido any photographs until the photo lineup at the police station on October 24, 2002.[53]  Holguin further contends Salcido saw Holguin's photo in the media before Detective Pantoja asked him to identify Cedillo's assailant in the photo line-up.[54]  Holguin argues the identification procedures violated his Sixth and Fourteenth Amendment rights.[55]

Holguin raised this claim in his direct appeal:

> Citing *Cantu v. State*, 738 S.W.2d 249 (Tex. Crim. App. 1987), Appellant argues the photo lineup was impermissibly suggestive because his photograph was shown to Salcido on two separate occasions, first at Cedillo's funeral and then at the police station approximately two weeks later.  In *Cantu*, the court acknowledged that showing the victim four photo lineups, three of which contained the appellant's photograph, over a four month span was suggestive. . . . Although *Cantu* may be helpful to Appellant, we need not reach the merits of his complaint because he failed to preserve it for appellate review.[56]

---

[50] *Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332 n.5).

[51] *Id.* at 102.

[52] Pet'r's Pet. at 6, ECF No. 1.

[53] *Id*.

[54] *Id*.

[55] *Id*.

[56] *Holguin*, 2014 WL 4536544, at *3.

The Eighth Court of Appeals held—based on a state procedural rule—that Holguin failed to preserve his claim for appellate review:

> When a pretrial motion to suppress evidence is overruled, the defendant need not subsequently object to the admission of the same evidence at trial in order to preserve error, but if the defendant affirmatively states that he has "no objection" to the evidence, he waives any error in its admission. *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008). Here, the State sought the admission of the pretrial photo lineups at trial. When the trial court asked if Appellant had any objections to their admission, defense counsel responded, "No objection, Your Honor." By affirmatively stating at trial that he had no objections to the admission of the evidence in issue, Appellant waived and failed to preserve his right to contest the admission of the evidence on appeal on the grounds raised in his motion to suppress.[57]

Holguin raised this same claim in his state habeas proceedings, but the Court of Criminal Appeals denied it without written order.[58]

Davis contends—because the state court rejected this claim on an independent state law basis—federal review of this claim is procedurally defaulted.[59]

The doctrine of procedural default limits the scope of federal habeas review.[60] The doctrine requires a federal habeas court to refuse review of all claims the state courts found defaulted pursuant to "an independent and adequate state procedural rule," unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[61]

A state procedural ground is "independent" if the last reasoned state court opinion clearly and expressly indicates that its decision is independent of federal law.[62] A state procedural ground is "adequate" when the procedural rule is "strictly and regularly followed" and applied consistently in the

---

[57] *Id.*

[58] Action Taken, April 5, 2017, ECF No. 8-8.

[59] Resp't's Answer at 11, ECF No. 7.

[60] *Matchett v. Dretke* , 380 F.3d 844, 848 (5th Cir. 2004).

[61] *Coleman*, 501 U.S. at 750; *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014).

[62] *Reed v. Scott*, 70 F.3d 844, 846 (5th Cir. 1991).

vast majority of similar cases.[63]  The petitioner bears the burden of demonstrating that the relevant rule was not firmly established or regularly followed.[64]

To establish "cause" for a procedural default of a habeas claim, a petitioner must show some external factor impeded his ability to comply with the state's procedural rules, or that his counsel rendered constitutionally ineffective assistance.[65]  "An error amounting to constitutionally ineffective assistance is 'imputed to the State,'" and is external to the defendant.[66]  "Attorney error that does not violate the Constitution, however, is attributed to the prisoner under well-settled principles of agency law."[67]

To establish a fundamental miscarriage of justice, the petitioner must make a "persuasive showing" that he is actually innocent—that is he did not commit the crime of conviction.[68]

The last reasoned opinion rejecting Holguin's claim regarding the identification evidence—the Eighth Court of Appeals' opinion—explicitly and unambiguously relied on a state procedural rule in denying relief.[69]  The Court of Criminal Appeals denied Holguin's claim without written order.[70]  "A state court's unexplained denial of a habeas petition raising federal claims is not sufficient, for purposes of federal review, to lift a procedural bar imposed on direct appeal."[71]  "When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on

---

[63] *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).

[64] *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

[65] *Coleman*, 501 U.S. at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[66] *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017).

[67] *Id.* (internal quotations omitted).

[68] *Bagwell v. Dretke*, 372 F.3d 748, 757 (5th Cir. 2004).

[69] *Holguin*, 2014 WL 4536544, at *3.

[70] Action Taken, April 5, 2017, ECF No. 8-8.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999) (citing *Ylst* as basis for "look[ing] through" the Texas Court of Criminal Appeals' unreasoned decision to the decision of the intermediate appellate court on direct appeal).

[71] *Ylst*, 501 U.S. at 801.

the matter" to determine whether the decision is an adjudication on the merits or based on a procedural rule.[72] Although the Texas Court of Criminal Appeals' denial of a claim generally signifies a decision on the merits, "where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."[73]

In his petition, Holguin did not offer cause for his procedural default or allege prejudice. He did not claim the relevant rule—a defendant waives his right to later contest the admission of evidence once he affirmatively states at trial that he has "no objections"—was not firmly established or regularly followed. He also did not reply to Davis's answer, which raised the procedural default issue.

Furthermore, a review of the record does not establish cause for the default and actual prejudice as a result of the alleged violation of federal law. It also does not demonstrate that the Court's failure to consider Holguin's claims would result in a fundamental miscarriage of justice.

Suggestive identification procedures—which lead to the admission of evidence irreparably misidentifying the defendant as the perpetrator of a crime—may violate a defendant's right to due process.[74] However, a thorough review of the record in this case—including a review of the hearing transcript on the motion to suppress—reveals that Detective Pantoja did not instruct Salcido to identify Holguin as a perpetrator, and that the media did not distribute Holguin's photograph before Salcido's initial, tentative identification of Holguin as a perpetrator.[75] Thus, the identification process was not impermissibly suggestive.

---

[72] *Jackson v. Johnson,* 194 F.3d 641, 651 (5th Cir. 1999).

[73] *Ylst,* 501 U.S. at 803.

[74] *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

[75] Trial Tr., vol. 2 (Motion Hearing, pp. 22–23, 26–29), at 14–16, ECF No. 8-5; Trial Tr., vol. 4 (Trial on the Merits, pp. 146, 159–163) at 145, 148–49, ECF No. 8-5.

Further, Salcido testified at trial he told Detective Pantoja that Holguin "strongly resemble[d]" the driver, but he did not positively identify Holguin as the driver.[76] Holguin's trial counsel emphasized Salcido's inability to positively identify Holguin as a perpetrator to the jury.[77] Thus, there was no "irreparable misidentification" of Holguin as a perpetrator of the crime.

Because the identification process was not impermissibly suggestive and there was no irreparable misidentification of Holguin, his right to due process was not violated. Accordingly, Holguin has not established prejudice regarding his default of this claim.

Finally, Holguin has not shown his actual innocence. Although Holguin asserts his innocence by means of a "Motion to Supplement His Writ With Evidence of Actual Innocence Via DNA Report,"[78] the DNA report does not establish Holguin's factual innocence of the crime of conviction. The report merely excludes Holguin as a contributor to the fingernail scrapings collected from Cedillo's body.[79]

Because the state court decision rested upon state law grounds independent of federal law and adequate to support the decision, and because Holguin has not shown cause or prejudice for the procedural default of his claim or that he is actually innocent, a federal merits review of his claim is barred.[80]

### B. Sufficiency of the Evidence

Holguin contends there was insufficient evidence to sustain his conviction. He claims "the State's case was premised almost entirely on impermissibly suggestive and unlawful evidence of

---

[76] Trial Tr., vol. 4 (Trial on the Merits, pp. 37–38, 42, 149) at 118, 119, 146, ECF No. 8-5.

[77] Trial Tr., vol. 5 (Trial on the Merits, pp. 69–72), at 158–59, ECF No. 8-6.

[78] Pet'r's Mot. to Supp., ECF No. 5.

[79] *Id.*, Ex. (Tex. Dep't of Public Safety DNA Laboratory Report).

[80] *Coleman*, 501 U.S. at 729.

identification."[81]  Holguin raised this issue in his direct appeal, and the appellate court found the evidence sufficient to support his conviction.[82]

*Jackson v. Virginia*, 443 U.S. 307 (1979), states the controlling federal law with regard to an insufficiency-of-the-evidence claim.  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[83]  When applying this standard, all credibility choices and conflicts in the evidence are resolved in favor of the verdict.[84]  A federal habeas court "must defer to the factual findings in the state court proceedings," and "respect the ability of the fact-finder to evaluate the credibility of the witnesses."[85]

The state appellate court found the following evidence sufficient to support Holguin's conviction:

> Salcido identified Appellant as the driver in two separate photographic lineups, and the lineup in which Appellant's photograph was circled, signed, and dated was admitted into evidence at trial without objection.  Further, Appellant was connected with the crime through other evidence.  He admitted to Pantoja that he drove the sedan identified by the witnesses into the United States approximately two hours before Cedillo's murder.  Although Appellant claimed that he drove back into Mexico shortly thereafter and that the sedan was stolen later that day, Pantoja testified he was unable to find any records verifying Appellant's claim, and records obtained from the Department of Homeland Security established that the sedan crossed the border only once that day.  And the witnesses' description of the driver matched Appellant's physical stature and appearance.  . . . By finding Appellant guilty, the jury necessarily chose to believe Salcido's testimony, and in conducting our legal sufficiency review, we are prohibited from re-evaluating the weight and credibility of Salcido's testimony or substituting our judgment for that of the jury.[86]

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  The appellate court's decision

---

[81] Pet'r's Pet. at 6, ECF No. 1.

[82] *Holguin*, 2014 WL 4536544, at *6.

[83] *Jackson*, 443 U.S. at 319.

[84] *Id.*; *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

[85] *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989).

[86] *Holguin*, 2014 WL 4536544, at *6.

14

is not clearly contrary to or an unreasonable application of *Jackson*. Accordingly, habeas relief on this claim must be denied.

### C. Jury charge

Holguin alleges the trial court abused its discretion by denying his objection to the jury charge, which he argues allowed conviction of capital murder with a mens rea of less than intentional or knowing.[87] Holguin argues that capital murder requires a specific intent to kill, and that being charged as a conspirator improperly relieved the State of its burden of showing that he had the specific intent to kill the victim.[88]

Holguin raised this issue at trial, and in his appeal he alleged this error violated both state law and his right to due process:[89]

> In his third issue, Appellant contends the charge was erroneous . . . because it impermissibly permitted the jury to convict him of capital murder as a coconspirator under Section 7.02(b) of the Penal Code without requiring the State to prove that he had the specific intent to kill Cedillo."[90]

The Eighth Court of Appeals' decision addresses only the state law issue.[91] It concludes the State needed only prove that Holguin had both the mens rea to engage in the conspiracy and the culpable mental state to commit the actual felony:

> Appellant's first complaint concerns the inclusion of Section 7.02(b) in the jury charge. Appellant does not dispute that the law of parties, including the theory of party responsibility set forth in Section 7.02(b)11, applies to capital murder. *See Johnson v. State*, 853 S.W.2d 527, 534 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 852 (1993) ("This Court has continually held that the law of parties announced in §§ 7 .01 and 7.02 is applicable to capital murder cases."); *Gonzalez v. State*, 296 S.W.3d 620, 629 (Tex. App.—El Paso 2009, pet. ref'd) ("The law of parties, as set out in Texas Penal Code § 7.02(b), may be applied in a capital murder case."); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd) ("The law of parties applies to the offense of capital murder. . . ."). He does, however, dispute the applicability of Section 7.02(b)

---

[87] Pet'r's Pet. at 7, ECF No. 1.

[88] *Id.*

[89] Appellant's Br. at 40–46, *Holguin v. State*, No. 08-12-253-CR, ECF No. 8-3.

[90] *Holguin*, 2014 WL 4536544, at *6.

[91] *Id.* at *6–7.

here. Appellant asserts Section 7.02(b) applies "only in [capital murder] cases where a showing was made of specific intent, or where evidence of a conspiracy was advanced and the murder should have been anticipated." We disagree.

Appellant contends that, although Section 7.02(b) does not itself require a finding of intentional conduct, the State was nonetheless required to prove he possessed the specific intent to kill Cedillo because capital murder is a "result of conduct" offense. He is incorrect. Section 7.02(b) eliminates any necessity on the part of the State to prove Appellant possessed the specific intent to kill Cedillo. *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. 1979); *Gonzalez*, 296 S.W.3d at 630. To convict a person of capital murder as a coconspirator under Section 7.02(b), the State need only prove that the person had both the mens rea to engage in the conspiracy and the culpable mental state to commit the underlying, i.e., the intended, felony. *Gonzalez*, 296 S.W.3d at 630, quotation marks and internal citations omitted. The State is not required to prove that the person had the intent to commit the actual felony perpetrated by a co-conspirator because the mental state for the underlying felony supplies the mens rea for the actual felony. *Id.*, quotation marks and internal citations omitted.[92]

The Court of Criminal Appeals refused discretionary review of the appellate court's decision.[93]

The state court's denial of this claim was not clearly contrary to or an unreasonable application of federal law.

Moreover, improper jury instructions in state criminal trials do not generally form a basis for federal habeas relief.[94] In examining habeas claims of improper jury instructions, the inquiry is not whether there was prejudice to the petitioner, or whether state law was violated, but whether there was prejudice of constitutional magnitude.[95]

The jury charge in this matter included the following instructions:

. . . a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
Each party to an offense may be charged with commission of the offense.
Each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

---

[92] *Id.*

[93] *Id.* at *1.

[94] *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991).

[95] *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986).

You are instructed that a person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

You are further instructed that if a person in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

***

You are instructed that a person acts "**intentionally**", or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

You are instructed that a person acts "**knowingly**", or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person commits "**capital murder**" when he intentionally commits the murder in the course of committing or attempting to commit kidnapping.[96]

Pursuant to these instructions, the State was required to prove that Benito Holguin, while kidnaping or trying to kidnap Cedillo, intended to kill the victim, and that Alfredo Holguin intended to promote or assist the kidnaping. In other words, the jury charge authorized the jury to convict Alfredo Holguin as a principal actor or as a party to the offense under either Texas Penal Code § 7.02(a)(2)—aider and abettor—or § 7.02(b)—co-conspirator. Accordingly, the jury was properly instructed that, to find Holguin guilty, they had to find that he intentionally caused the death of Cedillo as a principal or by aiding and abetting in committing a felony resulting in his death. This instruction was sufficient to ensure the verdict's reliability.[97]

Furthermore, the appellate court determined that—as a matter of state law—Holguin's argument regarding mens rea in the context of Texas "law of the parties" and capital murder was unsustainable.[98]

---

[96] Clerk's R. at 170–71 (Charge of the Court, pp. 2–3), ECF No. 8-7 (emphasis in original).

[97] *Livingston v. Johnson*, 107 F.3d 297, 312 (5th Cir. 1997).

[98] *Holguin*, 2014 WL 4536544, at *6–7.

Holguin cites no constitutional principle suggesting that that capital murder requires a specific intent to kill. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court."[99] Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of federal law.[100]

### D. Ineffective assistance of trial counsel

Holguin alleges that, at the pretrial suppression hearing, his counsel should have called witnesses or presented evidence.[101] Holguin makes only the conclusory allegation that "Salcido would have testified to the State[']s tactics in the pretrial hearing which would have eliminated the State[']s only identification."[102] Holguin raised this claim in his state habeas proceeding,[103] and the Court of Criminal Appeals denied relief.

Ineffective-assistance-of-counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[104]

---

[99] *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (quoted in *Sprouse v. Stephens*, 748 F.3d 609, 616 (5th Cir. 2014)).

[100] *Chester v. Thaler*, 666 F.3d 340, 345 (5th Cir. 2011) ("The first step in determining whether a state court unreasonably applied clearly established federal law is to identify the Supreme Court holding that the state court supposedly unreasonably applied.").

[101] Pet'r's Pet. at 7, ECF No. 1.

[102] *Id.*

[103] Pet'r's Appl. for a Writ of Habeas Corpus under Code of Criminal Procedure Article 11.07 p. 10, at 43, ECF No. 8-10.

[104] *Strickland*, 466 U.S. at 687.

A habeas petitioner has the burden of proving both prongs of the *Strickland* test.[105]

When deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[106] Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise.[107] Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable.[108] Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument.[109] "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding."[110]

Claims that trial counsel erred by not calling witnesses are not favored because the presentation of testimonial evidence is a matter of strategy and because allegations of what a witness would have testified are largely speculative.[111] To establish that they were prejudiced by counsel's failure to call a witness, a habeas petitioner must demonstrate "not only that the testimony would have been favorable, but also that the witness would have testified at [the proceeding]."[112] "Ordinarily, a defendant's failure to

---

[105] *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008).

[106] *Strickland*, 466 at 688–89.

[107] *Id.* at 689.

[108] *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289–90 (5th Cir. 2011).

[109] *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

[110] *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

[111] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

[112] *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002), *quoting Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim."[113]

Moreover, a federal habeas court must review a state petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of § 2254(d),"[114] and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold."[115] Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[116]

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.[117]

Holguin has failed to demonstrate that Salcido was not only available to testify at his suppression hearing, but also would have provided favorable testimony. His conclusory allegation concerning Salcido's testimony is not sufficient to meet his burden of proof on an ineffective-assistance-of-counsel claim.[118] Because Holguin has not met his burden of establishing that counsel's performance was deficient or that he was prejudiced by the alleged error, the state court's adjudication of this claim was not contrary to or an unreasonable application of *Strickland*.

---

[113] *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).

[114] *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

[115] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[116] *Harrington*, 562 U.S. at 101.

[117] *Id.* at 105.

[118] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a judge issues a certificate of appealability.[119]  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.[120] The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[121]

In this case, reasonable jurists could not debate the denial of Holguin's § 2254 petition on procedural grounds, or find that the issues presented are adequate to deserve encouragement to proceed.[122] Furthermore, Holguin has not made a substantial showing of a constitutional right. Accordingly, the Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes Holguin procedurally defaulted his claim that the identification evidence introduced at trial was predicated on an impermissibly identification procedure, and he has not asserted cause for, or prejudice arising from, his procedural default of this claim.  The Court further concludes the state court's determination that Holguin was not denied his right to due process—based on insufficiency of the evidence or the jury charge—was not clearly contrary to or an unreasonable application of federal

---

[119] 28 U.S.C. § 2253(c)(1)(A).

[120] *Id.* § 2253(c)(2).

[121] *Id.*

[122] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

law.  The Court finally concludes the state court's denial of Holguin's ineffective-assistance-of-counsel claim was not clearly contrary to or an unreasonable application of *Strickland*.

Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Holguin's petition for a writ of habeas corpus (ECF No. 1) is **DENIED** and his civil case is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Holguin is **DENIED** a certificate of appealability.

**IT IS ALSO ORDERED** that all pending motions are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SO ORDERED**.

SIGNED this 15th day of March, 2018.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE